I wonder if the attorneys who are going to orally argue would step up and tell us who you are. Unfortunately, I have to pull this down. It records your voice, but does not amplify it, so you need to keep your voice up for us all ears up here. Good morning, Your Honor. My name is John Lechinger. I represent Empire Today. Good morning, Your Honor. This is Martin Tully. I represent the defendants' appellees. Good morning, Mr. Tully. Thank you, sir. This is one of the fewer or rarer instances where the first name on the brief also argues. Is that right, Your Honor? Generally, it's the third name. I can make a call. We only have two, but I can get the second guy here. He did all the work. May it please the Court. It may please the Court if I can ask you a question right out of the chute. Please, Your Honor. You opened your brief, really, with a rather extended discussion, rightly so, of some comments that were made by the trial judge initially. You used the phrase, a pleading defect. She was referring to a pleading defect in the brief. I was wondering what you meant by a pleading defect, because what she was really referring to was some language in the contract, not any language in the brief. But you seem to assume that if she was going to reverse this or throw this complaint out on the basis of this, quote, pleading defect, it was something that could have been cured with an amendment to the brief. I believe, Your Honor, you're referencing the comments by the Court about the difference  Right. I mean, were you conceding that there was a pleading defect that needed to be cured in response to that particular concern that she had with the contract? We don't concede that there's a pleading defect, but I'm looking at the record. I was referring to your brief. I'm not even sure what page it's on, but you referred to it as a pleading defect. Okay. And the reason I did that, Your Honor, is the record at page 4, which is Judge Mason's No allegation in the complaint that the defendants or any of them are engaged in Sold Empire's products. Sold Empire's products. I think we're splitting hairs here as to Luna's Empire. I think that was kind of sarcastic. I viewed it as kind of sarcastic and certainly a curable defect, because neither one of the companies makes their own products. Well, it would be a curable defect that would kill the patient, because if you had argued that they would have to be selling the Empire's product, you know, then you wouldn't have a cause. Factually, the cause of action would have dissipated. Right. Because they were not selling Empire's product, you probably wouldn't even object to that, unless they stole it from Empire, because they'd have to buy it from Empire first. So you were objecting to the fact that if it didn't say they were selling Empire's product, then it didn't state a violation. But if they were, in fact, selling Empire's product, which probably maybe it could have been the case in the universe of discourse, but not in this world, you know, because that's not the basis of your action. Your action is that they're selling Luna's products, hopefully, as far as you're concerned, that the court would spin that language in the contract as being products in the style of Empire. Namely, carpets, or siding, or whatever, home improvement items. Well, if you look at the definition of products in the contract, and the description of what the salespeople – You made that clear in your brief. This is apparently – I'm not sure just what prompted that particular remark out of the mouth of the court, but this is the 2615 motion to dismiss, review, de novo, so we won't really care what she said. All right, Your Honor. And to answer your direct question about why I referred to it as a pleading defect, she made these comments about the contract, and her ultimate conclusion, and I don't think it was the basis of her ruling to dismiss, was that there was no allegation in the complaint. And it was insufficient to state a cause of action. Right, because – correct. And I think with – Now, had it stated that they were selling Empire's products, I suppose, from a technical point of view, it would have been sufficient to sustain a cause of action, albeit a cause of action that you would have no hope of ever proving, or for which you could claim any damage. Well, certainly not – under a particular, very skewed reading of the contract, that might be so. But I didn't believe that the trial court was delving into the contract and making an interpretation as to the actual definition – she doesn't do it in her ruling – as to what Empire's products in the contract means. There's a – the definition of Empire's products, which I think is beyond where we're at today. Well, it's a question of whether it refers to title, or whether it refers to a characterization having to do with the nature of the product. Right. But I don't believe that that was really the basis of her ruling. What was the basis of her ruling? I mean, I understand what she said, but did she cite to any cases, in support for her position that this contract, on its face, couldn't be saved? No, Your Honor. In fact, we've – Did she cite to any cases? No, Your Honor. You had cases in your motion in response to the motion to dismiss, of course, and Mr. Tully's motion to dismiss cited cases, but she didn't cite to any cases, did she? There are no cases, Your Honor, and we have looked. We've challenged the defendants in our brief. No, I think Mr. Tully would disagree with you that there aren't any cases in support of her position. In fact, I know he's going to cite us to many of them. He already has in his brief. I would ask him to tell you which ones of those were covenant not to compete cases dismissed at the motion to dismiss case. Well, he's going to say that's not the point. The point is, is what is the rule of law with respect to these kinds of contracts and whether they're susceptible to a motion to dismiss under pleadings? I think the key is probably the status at this point of the legitimate business interest required. Well, I think it is. And I think that Justice Steigman's opinion, with all due deference to Justice Steigman, doesn't explain one problem that at least I have. I think there's probably a philosophical division as to what the public policy ought to be with regard to non-compete contracts. The first looks ultimately in its roots to restraints of trade and restraint deprivation of employment opportunities to employees with the classical distinction made between a purchase of a business as opposed to the termination of employment, that somehow the public policy should be more conciliatory towards protecting a vendee from the competition of the vendor as opposed to protecting an employer from the competition of an employee. I don't want this to go on forever, but it seems to me that unless you can show that the employer is being harmed by the competition of the employee in a manner that would not have taken place but for the prior employment of that employee by the point, that the rationale for permitting the employee to be restrained is very tenuous. Why should the employer be deemed to have purchased the freedom of that employee to act as someone else's employee after the employment is terminated, other than the rationale that the employer should not worry that he's creating a monster, that he's educating someone in how to impinge or encroach on the employer's business? And, you know, that's an unanswered question. Now I've read the Mahanti case, and I know that the Supreme Court doesn't talk about legitimate business interests, but on the other hand, isn't it possible that the legitimacy of the business interest aspect is encompassed in the term reasonable when you look to see if it's a reasonable duration and a reasonable geographic boundary? How do you determine whether it's reasonable? And isn't the legitimacy of the business interest a factor in determining reasonableness? I think I've said my piece for the day. I certainly agree that the Sunbelt case basically says the Illinois Supreme Court has never adopted this test, and the only things that the Supreme Court has ever in isolation looked at are temporal and geographical limitations to make sure the agreement is reasonable. So to your point, Your Honor, there is some element of reasonableness that infiltrates no matter what. I think what the decision is saying is... Of legitimacy of business interest that permeates into the term reasonable. In balance with the right for private parties to contract and reach an agreement, which is why there's so much focus on whether it's fair to both parties. But in any event, for this particular case, everything you're asking requires factual delving into the situation to understand what is the nature of the business, what is the nature in this particular case of the confidential information, what balance of harms is there, what harm is there possibly to the employee or contractor. And in this case, to cut right to the chase, putting Sunbelt aside and putting the question of whether this test should be applied, this Court said this case lives and dies or falls and rises on the issue of confidentiality. And in so doing, you look at her opinion, she says... Before you look at it, I know what she said. Remember, we don't care what she said. This is a 2-6-15 motion. We review this contract. They know it. And that's how we view your complaint. We take all of the allegations as true. We don't go outside of the complaint except to refer to the contract, which is incorporated into it. That's our focus. So I don't really care what she said. Okay? Yes. Here's what the contract says about confidential information. You define it as all information of, about, or concerning the business of the company and its clients that derives actual or potential economic value from not being known outside the company. Then we have a pretty good judge who wrote a pretty good opinion in which he said, Even if we were to accept the contention that the pricing formula involved in the case. This is Minogue. By defining confidential information as essentially all of the information provided concerning or in any way relating to the services offered by the company, the confidentiality agreement amounts in effect to a post-employment covenant not to compete, which is completely unrestricted. This type of covenant is unreasonable and will not be enforced. A pretty good judge wrote that. And that seems to be the argument that the trial judge was relying on, because she found the covenant, and I suspect that language specifically on its face, to be too broad to be enforceable and unsalvageable, even though it was followed by a whole series of specific items, which over the years in various contexts has been held to be protectable. Customer lists, pricing strategies, that sort of thing. All of those things, depending on the context that are listed there, have been held to be legitimate focuses of a confidentiality agreement. But the trial judge currently focused on this broad, broad opening barrage, and I was wondering how you defend yourself against that. I defend myself this way, Your Honor. First of all, if you look at page 23 of the defendant's brief, they omit two sentences when they recite this paragraph. When the judge described, without reciting the contract terms in her opinion, I know I'm not supposed to refer to her opinion, she doesn't reference the language. It's the language you just referenced, which qualifies. It doesn't say, as in the case you just referenced, anything that's given to the contractor. It says anything, but it has to derive actual or potential economic value from being kept secret from the public. That's right from the Illinois Trade Secrets Act. I know it is. So there's a significant distinction here between the case that you cited, and there's a significant distinction from the judge's characterization of the confidentiality agreement. I would say to you this, if that language wasn't in there, I'd have a much tougher problem. But that language significantly limits what is confidential and what's not, by saying it has to be something that brings economic value. I just wanted to see what your response was, because I have a hunch that's at the heart of throwing this case out at this stage, at the pleading stage. To throw it out at the pleading stage would require this contract to be unenforceable on its face, in any circumstances that you can think of. I respectfully think that it was, in fact... Repeat that language again. It saves that provision. It is the second sentence of Section 11.1 of the agreement, each of the three agreements. Confidential information is all information of, about, or concerning the business of the company and its clients that derives actual or potential economic value from not being known to the company's and its clients' competitors or the public. There are cases, absolutely cited cases, where that one phrase is omitted and it says anything we give you is confidential. That's a problem. I would be shrinking here right now if I didn't have this other qualifying language which says if it's not deriving economic value from a secrecy, such as pricing, by way of example. Can you imagine going down the street to your direct competitor, and you're in the home... Well, you know, I still would question you. I don't know if you ever suffer from insomnia that forces you to watch an information, you know. And unfortunately, I can claim to have been subject to that experience. And there are people who sell volumes for quite a substantial price that deal with public information that is simply not known to people. But it's not information, for example, information about how to buy tax means, you know. Now, that's not information that this person put together with his own genius, but he's aware of the fact that there's little distribution of that knowledge, and therefore he's selling it. Well, is that secret information? Is the fact that it's of economic benefit to the employer, is that enough to make it secret? Or does it have to be information developed for and by this particular employer for his own use, where he can claim some sort of proprietary right to that information? I think... Go ahead and answer the question. I thought I had you for a minute, and then at the very end you threw in the economic value to the company. The fact that it may not be known to the public isn't of itself enough necessarily to make a company... But it can also be of economic value, and the fact that it's of its esoteric nature giving economic value to the employer. But it's not something that the employer fashioned or designed or created for its own use. Well, the pricing in this situation... Yeah, well, if it were restricted... But that savings clause, as you point to, doesn't fine-tune itself that way. Respectfully, I think it properly qualifies... I mean, you're right. Now the question becomes, if you look at your complaint, and you look at paragraph 21 of your complaint, and forget about the broad language in paragraph 11, there's 21 stated cause of action under the existing law. Forget about the content. There's paragraph 21 stated cause of action. Yes. It says that we developed it ourselves. It contains trade secrets. You talk about pricing par sheets, customer lists, information on customer preferences and installations, leads on new and prospective customers, terms of its contracts with customers, customer care packages, and sales paperwork. Yes, Your Honor. So there you're setting the stage for what you are claiming in later accounts of the complaint. In paragraph 36 you say, none of the former sales reps have returned these trade secrets and confidential and proprietary business information or assured us that they've destroyed the information. Yes, Your Honor. I guess my question is, when your complaint is specific but your contract is general, does the specificity of your complaint save the contract from being found void as against public policy? Because I think this basically, we said this motion to dismiss was based on public policy grounds, that the language of the contract violated public policy and existing Illinois law, both with respect to confidentiality and with respect to restrictions on working for somebody else in the same field for a period of a year afterwards. Paragraph 13. And I think that the judge made her ruling on the flawed understanding or flawed characterization of the contract. She omits the language about deriving economic value, number one. Number two, I don't know how you get to that conclusion until you understand the business factually and what the nature of the confidential information is. Do you agree that the second count with respect to tortious interference goes out if the contract goes out? Yes. You do? Yes. Okay. Anything else? We'll give you a chance to respond after we've heard from Mr. Tully. Thank you, Your Honor. Thank you. What's your best case? Good morning. Good morning, Mr. Tully. What's your best case? I'll tell you what's disturbing me about this is that it's going out on the 2-6-15. What is your best case for disposing of this kind of a contract on a 2-6-15 motion to dismiss? There is no one best case, Your Honor, because it's more of the practice, which is reflected in numerous cases, that it is perfectly appropriate for an Illinois court to decide a Rule 2-6-15 motion to dismiss based solely upon the face of the complaint and the attachments to that complaint. In fact, that's exactly what they're supposed to do. If they fail to state a cause of action when each count of the complaint is taken as true. That's absolutely right. In fact, here we have the benefit of the allegations made by Empire. And counsel states that the court was without any information about Empire's business. That's not true. The complaint makes allegations regarding the natures of the material here and with respect to the nature of Empire's business. The trial court had available to her the allegations of the complaint and the agreements that Empire claimed were being breached in one way or another. And, of course, the contract attached to the complaint is not only part of the complaint, but Illinois law holds that it can trump the allegations of the complaint, which is, Your Honor, touched upon earlier. The court below was really focusing on the very nature of the confidentiality provision, as well as, which wasn't discussed much in the last set of comments, the non-compliance provision. I've already read your 34. Look at 37, paragraph 37 of the complaint. 34 alleges that they've got trade secrets involving pricing par sheets, customer lists, information on customer preferences and installations, leads on new and prospective customers, terms of the contracts, and so forth. Now look at 37. These former sales representatives have disclosed and continue to disclose these trade secrets and proprietary venture to third parties. Okay? I see that, sir. How more specific can they get in their pleadings at this stage? Your Honor, they can get a lot more specific. Okay. Let me respond to that in two ways. First of all, one thing that has been conspicuously absent in any of the briefs, including the argument here today, is what exactly is it that the former independent sales representatives supposedly have that is a confidential proprietary trade secret? A pricing par sheet. I mean, that's a pretty easy one to figure out, isn't it? It is pretty easy to figure out. A customer list. That's not hard to determine, is it? No. Now whether or not that customer list is entitled to confidentiality, that's a specific question that goes beyond whether or not you can throw it out on a 2615, isn't it? They're claiming in their complaint that this particular information is confidential, has an economic impact on the company, and that these former representatives are disclosing it to Luna and other third parties. Two points of response, Your Honor. First, how specific do you have to plead? I mean, it's a fact-pleading state, I know. That's correct, Your Honor. Number one, you have to look at Section 12 of the contract because the contract has to come into play here. What is Section 12? Section 12 talks about the return of property. And return of property is important here because it needs to be juxtaposed with Section 11.3. But if you're saying that by returning the property they have safeguarded confidentiality, is that what you're saying? What I'm saying, Your Honor, is that Section 12 is a safeguard of the confidentiality insofar as they're required to return the property. But they allege in 36 that they haven't returned it. It doesn't matter whether they return it or not. No, Your Honor. Because they're not going to return their memory traces. That is true, Your Honor. The point of Section 12 is what it defines as property, which takes it out of the definition of confidential. You have two different clauses. One defines confidentiality, and the other one defines property, which is unless there's no meaning to Section 12, which would be an incorrect description. Things like pricing sheets and customer account lists are not confidential. Please, I mean to interrupt you here. I'm sorry, Your Honor. Because I think we have to expand at least more specifically the area that we're discussing. There is the confidentiality clause, and there is the restricted employment clause. They're not the same. The confidentiality clause prohibits disclosure. The employment clause, even if it encompasses legitimacy of interest, will entail use of the confidential material in competing with the employer. Even if we would decide that the confidentiality clause is too broad, and therefore invalid, do you think that that would vitiate the restricted employment clause? You're absolutely right, Your Honor. There are two different issues. It wouldn't, would it? Because you may not be able to restrain disclosure, but you can still presume in the restricted employment clause that it may entail the use of confidential material that is legitimately confidential in competing with the employer, which would constitute a form of competing unfairly. Because you're using the employer's own investiture of its own proprietary secrets to turn against the employer and take prospective customers away from them. Now, you might be able to say that the confidentiality clause can be determined on a 615 motion from its face as an exhibit to the pleading. But would that permit you also to turn down the restrictive employment clause as being unreasonable, if in fact there is the possibility that these employees are going to use confidential information, legitimately confidential, in competing with their employer, assuming that there's a legitimate business purpose requirement still intact? The non-compete clause, the pure non-complete clause, is one that was discussed earlier in comments, which says that the former dependents are not supposed to sell Empire's products. And there's absolutely no contention anywhere, even today, that they've sold any of Empire's products. Well, now you're deflecting the discussion into something else. That's the non-compete, the non-disclosure confidentiality provision. Yeah, but I don't think you're arguing right now, at least I'm not, arguing the issue involving the use of the term company's products. I'm willing to do so, because I have major problems acknowledging that unfortunate terminology as being dispositive. Because are we really forced to, on the face of the four corners rule, to abandon any kind of visceral judgment or common sense in interpreting companies' products as being a characterization of the nature of the product, rather than a characterization of the title to the product? But that's a whole other discussion. Which I would be happy to engage in. But, Your Honor, you're asking about confidentiality and non-disclosure, so let me go straight to that. The point is, as was picked up earlier by comments by Justice Cahill, is that the clause, the non-disclosure clause, and the definition of confidentiality in Section 11.1, on its face, is overbroad. Wait a minute. I know that's your argument, and you're going to cite Minogue to me. Yes. If you look at Minogue, and if you look at the agreement that was under discussion in Minogue, it doesn't go into any specific examples in Minogue as to what that information is or could be, as opposed to this one, which does give specific examples. Then, if you look at Minogue, which is what I've got in front of me, if you look at the Illinois Trade Secrets Act, you could make an argument that the lawyer who drafted 11.1 had the Trade Secrets Act definition in front of him when he drafted it. Because some of the language is remarkably similar. He was a good lawyer, I suspect, and he was trying to conform their confidentiality language in their contract to the Trade Secrets Act. The point that comes out of Minogue, and it comes out of Luthenberger, Incidentally, Minogue went out on a preliminary injunction. I think there was a full evidentiary hearing with respect to that. Right, but the analysis focused on the language of the contract, with respect to that particular determination. Yes and no, but you're picking out one particular aspect of Judge Giganti's opinion, which clearly applies to the Minogue contract, but I don't think can honestly be transferred and applied to this contract. There is a broader principle, Your Honor, and that is where Illinois courts have found a problem with confidentiality or non-disclosure provisions, which are being used as a non-restrictive covenant, where they've had a problem with those being unenforceable on their face and overbroad, is where they plainly are encompassing material that is plainly not confidential. That's really the point here. But what if the complaint itself, as opposed to the contract, which arguably would include information that could be read to include information that could never possibly be confidential. But the complaint itself confines itself to specific examples, which have been held, depending on the case, depending on the circumstances, to be confidential. That gets you onto your blueprint. But not as defined by this contract and not as alleged in this case. You're going to stick to your overbroad, and it's just too overbroad to survive scrutiny at a 2-6-15 level. Let's assume it is. Let's assume it is. Why would that carry with it the non-compete allegations? The breach of the non-compete? That alone doesn't address the non-compete issue. The problem with the confidential non-disclosure is it's essentially trying to be used by Empire as a restrictive covenant prohibiting the former dependents from competing, because they can't use any of this unidentified information in order to earn a living. Supposing there wouldn't be a non-disclosure count in the complaint. But simply a non-compete count in the complaint. Why would the trial court on a 6-15 motion be able to draw a conclusion that the year and the Chicago area is unreasonable insofar as in protecting legitimate business interests without a hearing? Because that's apparent from the face of the complaint and the agreement itself. How is that? Section 13 purports to cover... Supposing they had no contractual confidentiality provision at all. Sure. Would that have to be the predicate for a non-compete provision? Or can they independently show in the context of their non-compete provision that there are confidential materials to be protected? Section 13 is overbroad to the extent that it seeks to prohibit the former dependents from selling, and we'll skip the Empire product point for a second, but let's just assume that... Selling products as defined in the instrument. The problem is, and this is what Illinois courts have routinely struck down, is when you have those restrictive covenants that purport to prevent a former employee not only from dealing with those who they developed relationships with while working with the former employer, but people who they never had any relationship or even the employer had no relationship with. And there is no limit on Section 13 in terms of Empire customers, people that the former dependents had any dealings with or had established any relationships with. It basically says that you are prohibited from selling carpet to anybody regardless of whether you had any connection with them whatsoever or regardless of whether Empire ever had any connection with them whatsoever. For the entire state of Illinois. It's not just the Chicago area, by the way. It's either the territory or the state whichever is greater. And they're really asking to impose this on the entire state of Illinois as far as the territory. But the real problem is that it covers and this is what Illinois courts have found to be repugnant, is when it purports to cover relationships that didn't exist or never happened while the employee was associated with the former employer or here the independent contractors. And that's another point. These are independent contractors. This is a non-exclusive agreement as reflected in Paragraph 3. Paragraph 3 allows basically these independent contractors to perform services for other businesses. So if the contract provided that they should not compete with any sales to any customers that involve the use of confidential sales techniques, that still would not apply? Well, the problem I have with getting into the hypothetical, Your Honor, is that this is a 2615 and we are looking at the contract and the allegations. And now what you're really getting into with all due respect is rewriting the contract. We have to enforce, and of course the appropriate thing for both the trial court and this court to do is to enforce the contract as written. We focus on the generic nature of the product, like carpets, as opposed to if it were something more unique than a piece of carpet. What if these guys required a highly sophisticated amount of training in order to sell the product? Would that make a difference? What I think makes a difference, Your Honor, is what the contract itself defines as what it is that the former independents are not supposed to be selling. And it says, Empire's products. There's no allegation, even as of today, they've ever sold Empire's products since parting ways with Empire. Well, the question is whether the word Empire, with the apostrophe, should be given preeminence over the definition of product. And the argument can be made at the very least. And that the phrase as used is ambiguous. And if it's ambiguous, it cannot be determined on a 616 motion. In response to that, Your Honor, I would disagree that it's ambiguous. I think the definition Oh, is it really? I mean, when people use in common parlance in context, the term company's products, that they actually mean products that belong where the apostrophe S is a possessive referring to the title ownership of the product, as opposed to common usage, which would facilitate the interpretation that they're talking about, the same product, notwithstanding the use of the more fine-tuned phrase in other parts of the agreement. Which, again, I'll refer back to Empire. Well, he makes that point though in his brief, that you could read Empire products to mean Empire products, that is, that they physically own and are in their warehouse, in which case they'd be stealing them, as Justice Gordon has pointed out. Or it could be a situation where it was analogous to somebody who was in Wal-Mart who goes to work for Target, and he's prohibited from selling Wal-Mart products, meaning those products which this retailer sells and that this retailer sells. I think a literal interpretation of company's products in this context would probably make Williston turn in his grave. I think so too, but that's beside the point, because he at least seems to be entitled to some kind of an argument that this is an ambiguous phrase on which he should be allowed to provide evidentiary material. I don't know. Two points on that, Your Honor. Number one, this is, of course, a restrictive covenant context. And this is an alleged restraint on trade. What is a restraint on trade? And, of course, these covenants are disfavored are to be strictly construed, and where contract provision is unambiguous, which we contest that it is unambiguous, the terms to be enforced is written. I think the other uses of company's products within Section 13 make it very clear they're talking about Empire's products, Empire's services, Empire, Empire, Empire. And I want to also take the court back to Section 3 of the contract. At the very least, it would probably be a mistake susceptible to reformation if it were to be taken literally. Except that we are dealing here in an area of law that is an exception from the general rule allowing free trade and exchange of information. We've got some guidelines too. I mean, admittedly, you're right. This is your public policy argument again, where these kinds of arguments, these kinds of contracts are arguably looked at with much more careful scrutiny than the average contract because public policy is implicated. But then we have the Trade Secrets Act, which we have some statutory guidance for what's a trade secret. And as I say, if you read their confidentiality agreement and then you read the Trade Secrets Act, when you say, hey, a Philadelphia lawyer drafted this with a statute at his elbow, he may have taken some liberties with it here and there, but it's clearly within the spirit of the Trade Secrets Act. Wouldn't you agree? Would you agree that a lawyer drafted 11-1? I would assume so. You could say maybe a bad lawyer, but a lawyer drafted it. I won't comment one way or the other. But there's another point with respect to the lower court's ruling, and I think this is actually important. I realize this is a de novo standard. But one thing that is appropriate to raise again with this court is the lower court, the circuit court's finding that companies' products means what it means and that therefore, as a matter of law, there can be no breach of the non-compete provision in Section 13 of the contract. With all due respect, Your Honors, that is an issue that empires should not be heard to contest right now because they didn't raise it on appeal and therefore it's waived. Well, they say they think they have. They presume that they refer to a footnote at 17 and everything. What did the trial judge do with that? Did the trial judge predicate her ruling on that one defect or did she move away from it and concentrate on the others? I believe that she gave multiple reasons for her conclusions. First, looking in the record, Your Honors, it's page 3 of the record. Page 4 was cited earlier when Empire's counsel was speaking. I mean, the very first thing that Judge Mason said was, first of all, the agreement specifically provides that the independent contractor defendants, the former independent contractors for Empire are following the termination of the relationship with Empire and may not sell the company's products the company is defined under the contract and refers to Empire. She goes on to basically make the point that since there's no allegation in the complaint that any of the defendants are engaged in the sale of Empire's products, that basically as a matter of law, there is no breach of the non-compete as pled in the face of the agreement attached to the complaint. Then Judge Mason goes on and says further, and this is when she goes on in her discussion of finding that both the non-disclosure and the non-compete provisions, section 11.1 and section 13, are overbroad and unenforceable on their face for the reasons that she described in her opinion. So I would put it to you, Your Honors, that those were both reasons for the circuit court's decision. And the first one, that she found that there was no breach as a matter of law, as courts in Illinois are allowed to do in a 2615 motion, looking solely at the complaint and the agreements attached thereto, is not an issue that Empire is entitled to argue on appeal. Thank you. Anything else? The only thing I would ask is whether the court has any questions. I would love to be that person that does that again in 18 years about not having anything more to say, but does the court have any questions with respect to the trial court's exercise of discretion with respect to the blue pencil? Because the one thing that I would just note there while you're thinking... I haven't traversed the record that carefully, but at some point, did they ask relief to amend? No, sir. To your memory, they did not. I mean, to amend the complaint. I believe if there had been a request to amend that had been denied, I would suspect that would be one of the points of the argument. Oh, did they make a blue penciling argument as far as the country? Yes, sir. Yes, sir. It was made on two different grounds. One, that there was... They noted the paragraph and said you could exercise your discretion to strike the offending language. Yes, sir. That request was made and our position would be, of course, that there's an abuse of discretion standard that applies to that particular decision by the circuit court as opposed to the denominator. I think you're right about that. Empire would have to show that there was an abuse of discretion by the circuit court in declining to exercise her equitable discretion not to blue pencil, and that should not be disturbed on appeal. Unless the court has any further questions, I will try to be that person once again that says I have nothing further to say, other than that we ask that... You've been a very careful and impressive advocate. Thank you. But we ask that you affirm the circuit court's decision on all accounts. On behalf of myself and my clients, thank you for your time and consideration. Counsel, a final word. I can have a moment to address two points. One, the issue of this alleged waiver. We view this, the judge's ruling, all seven pages of it as she was identifying, I believe, with some sarcasm after commenting about our failure to bring a preliminary injunction. And what was that all about? Your Honor, it was the first time it came up in the entire case. Not that it's really germane. I mean, she felt that you should have filed a TRO. Correct. Well, she would have had the rule on the motion to dismiss initially anyway, wouldn't she? She would. And we would have... I mean, if she's got a TRO here, your complaint was fashioned as a complaint for injunctive relief. Correct. You allege the three things you have to allege for injunctive relief. That's correct, Your Honor. But you didn't bring a TRO. We did not. The implication was that you were dragging your feet? The implication was we were dragging our feet. Laying in the weeds? I can tell you this is not the first time these companies have engaged with each other. And in every other instance, when we've had to file a lawsuit, within a month or two, we've had a settlement. So there were factual reasons why we didn't feel compelled. And you had a motion to dismiss pending? And a motion to dismiss pending, and we were... I assume take precedence over an evidentiary hearing on a TRO anyway, because the motion to dismiss alleges that you weren't stating a cause of action. And if you get rid of that, then the TRO goes away by itself. Yes, Your Honor. So with respect to having asked for leave to re-plead or not, the first words out of Judge Mason's mouth were I am going to grant the motion, and I am not granting leave to re-plead. So it would have been somewhat futile to ask for the request to re-plead. Well, the motion to re-plead would have been frivolous anyway, because if the re-pleading meant substituting the term empire for the term luna and the prayer for relief, that would have turned into a joke. Well, Your Honor, and to that point, counsel added a few words in his comments about, and as a matter of law, I find. It would be putting the ruling on the surface, on the very surface of the technical aspect of a 615 as opposed to at the heart, which is the contract rather than the pleading. Yes, we viewed her comment. There's certainly not a reasoned analysis here where Judge Mason concludes, I am finding as a matter of law that the term empire as products means X. I viewed her comment as, in the complaint you said luna as products you should have said empire, and she was tweaking us. But how about the fact that you did not attack her ruling as far as her interpretation of the company's product, so as to forfeit the argument? Your Honor, I don't believe she made a reasoned decision. There's no language in the opinion saying my interpretation of this word is as X. All she says is, the contract says this, your complaint says this, he didn't plead it properly. So we raised the pleading deficiency issue, preserved it in our brief in two different places, and we said we should be given leave to replete. The interpretation of that phrase, if you look at that phrase On its merits, as far as I can see at least, it would have the prospect of being eminently refutable, but not having argued it, have you forfeited it? We have not forfeited it, your Honor. We preserved the issue of repleting, and there is  an analysis where the court, contrary to what counsel says, says I am interpreting this clause to mean X. Contrary to what she says, I am interpreting the contract to be overbroad. And she says, this case lives and dies on the issue of confidentiality. So this was a passing, fleeting comment about a pleading deficiency. That's how we interpreted it. Now let's get to the substance of starting perhaps in reverse order about the covenant not to compete. Why do you think that time and geography are all that one should look for, or let's put it in a more reflective perspective. In looking at time, if you try to restrict competition that is otherwise unwarranted for a day, does it become reasonable simply because of the time length? And if so, how do you measure the reasonableness of the time period? I'll answer. You see, if you agree with that, you measure it on the basis of its functionality in the various aspects that public policy ordains these provisions. It doesn't harm the public excessively. That you have regardless of the justification for it. You know, it's an independent consideration in that sense. But then as you get closer to the interests of the public, what interests does it protect that the employer can legitimately ask to protect? And that takes us to the issue of legitimate business interest. But even if it's not a legitimate business interest, can an employer tell his employee who, an employer in the luggage business, tell his employee that I don't want you selling cars anywhere in the city for a week? Can he? Fair hypothetical. I think what the Sunbelt case was saying was the Supreme Court has routinely upheld these covenants not to compete. Really? They're going to allow an employer in one business context to restrict employment in another commercial context that has absolutely, that subserves absolutely no interest, economic or otherwise, of the employer. No, I think the Sunbelt case says there still is a degree of reasonableness. You do need to delve in factually to what the business is, how it functions and how it operates in assessing those terms. Now, if it's to protect an interest, what is the interest to be protected? Simply to keep an experienced salesman off the road so that he's immobilized for a period of time? Or does it have to protect something more personal to the employer, such as the use of the employer's special training, if not the use of a special trade secret, items of confidentiality? Well, I don't know that I think the point of Sunbelt is it doesn't have to necessarily get the confidentiality. Now, granted, if the employer, if the employee has a business relationship with the customer of his former employer, the employer may have an interest in keeping that customer, if the employer, if the employee is not a lawyer, from being able to take away that customer. But here, you're dealing with the retail trade. You probably don't see more than one event per customer in dealing with that employer. Buys his carpets once and then another generation passes. I don't have to be making these kinds of factual determinations. But we're not because the provision doesn't purport to require that it be a repeat customer. It says, stay off the carpet market in the state of Illinois. Why? Why should he be able to lasso this employee for a day against selling carpets in Illinois as long as he's not selling Empire's carpets or he's not using tactics that are secret to Empire? So why isn't the judge right here in saying, hey, a year or a day or a week, this is just too broad. And maybe because it doesn't attempt to restrict the employee from exploiting the employer so as to hurt the employer. I think there's two different questions here. No, I think it's one. I'm not sure if you're asking me to comment on some of them. It's long enough to have been four. If you're Sunbelt's holding, if it's not confidential information in customers, I can't answer that today. I know certainly time of training, investment in the person, these are going to be factors. But it's not spelled out in the provision. It doesn't say we want to keep you from using the training and the subsidies that our early salaries may have contributed to your training to sell carpets. This provision applies to carpet salesmen who were in the business for 40 years before they ever went to Empire. I think your question actually goes back to the question... You have to look at the four corners of the provision. Well, you do. And I think it goes back to your question before. What if there were no confidentiality provision in this case? If you reject Sunbelt... But it doesn't purport to even tumble to the requirement of confidentiality in spelling out the application of the restrictive cover. If you ignore Sunbelt and you assume a legitimate business interest is in place, and we're looking at confidential information here, what we're doing is we're putting, I think, the cart before the horse. Because... Just because we ultimately have to demonstrate a protectable interest if you reject Sunbelt, that doesn't mean it has to be articulated on the face of the contract. No, but if it's not articulated, the contract applies to whatever is in it. It fills the gaps by being general and being categorical. The contract, in fact, says when it doesn't say you have to use confidential information, it in fact tells you that the restriction applies whether it's confidential or otherwise. If you make it that specific, you'd be giving away the confidential information, wouldn't you? In what regard? If you want to make it specific as to what the confidential information is. The more specific you get, the more likelihood it is you're going to miss something, and something's going to develop over time, which is why the restriction on it having... But if it doesn't have a provision that purports to limit the covenant's application to the use of confidential information, then in fact, it's a blanket restriction that will be violated whether you use confidential information or not. Oh, I don't think so. I think under the case law, it would still be incumbent on the plaintiff to demonstrate whether the contract articulates what it is or not, what the legitimate business... Then you're saying there's a built-in blue pencil in the way this applies? No, I'm saying that even if you rule, and I don't believe the confidentiality provision is overbroad, because it does have the proper language in it, even if you were to rule it's overbroad, the non-compete on its own survives to the extent after Rule 2615, the plaintiff can demonstrate... Not if it's braced in a broad blanket manner. That is essentially what being overly broad is all about. Anything else? Could we, just as a final hypothetical, to respond to Justice Grant, could we uphold 11 and strike down 13? Do you see them intertwined in such a way that... No, I see them as standing separately. What I interpreted the court's concern to be was actually with the breadth of confidentiality provision, 11, and she read that into 13, and she said, I'm going to read this as saying... Or the other way around. Where... I don't see them linked. I think 13 can stand on its own, because if we reject... Or fall on its own. Or fall on its own. If we reject Sunbelt, and we have to prove legitimate business interest, that's going to be our burden, factually, to do that. I don't think the legitimate business interest has to be articulated in the contract. Thank you. Thank you. The case was well-briefed and well-argued. It'll be taken under advisement. Interesting case. And we will take a five-minute break.